# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **U.S. ALLIANCE GROUP, INC.** | CIVIL ACTION NO. _____ |
| **VERSUS** | JUDGE _____ |
| **CARDTRONICS USA, INC.** | MAGISTRATE JUDGE _____ |

## **COMPLAINT**

Plaintiff respectfully alleges the following for its action against Defendant, to wit:

### **PARTIES**

1.

Plaintiff is U.S. Alliance Group, Inc. ("USAG"), a California corporation with its principal place of business in Rancho Santa Margarita, California.

2.

Defendant is Cardtronics USA, Inc. ("Cardtronics") f/k/a Columbus Data Services, LLC ("CDS"), a Delaware corporation registered to do and doing business in Louisiana, with its principal place of business in Texas. Cardtronics was the surviving company in a merger with CDS on or around December 31, 2015 (CDS and Cardtronics are collectively rereferred to hereinafter as "Cardtronics").

### **JURISDICTION AND VENUE**

3.

USAG brings its Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

- 1 -

4.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2),(d) because a substantial portion of the pertinent events occurred in this district such that Cardtronics has sufficient contacts to support jurisdiction. Further, the Agreement for Processing Services between the Parties contains a forum selection clause whereby Cardtronics submitted to personal jurisdiction of any court in Orleans Parish and designated same as a proper venue for any claim brought by USAG, and to the courts in California for any claim brought by Cardtronics.

## APPLICABLE LAW

5.

Substantial pertinent acts, however, also occurred in California and USAG suffered harm in California as alleged herein, where it is domiciled. Cardtronics directed its actions at USAG in California. Cardtronics also interfered with agreements formed in California that set California as an exclusive forum. The Agreement between Plaintiff and Defendant sets forth that it "…shall be governed by the laws of the State of Louisiana applicable to contracts made and to be performed wholly within such state, without regard to the principles of conflicts of laws." Thus, California law applies to the non-contractual claims and likely applies to all claims because the Agreement in dispute was not performed wholly in Louisiana. Further, California has a recognized interest in having California law apply.

## FACTS

6.

On or about September 30, 2008, USAG and Cardtronics entered into an Agreement for Processing Services (the "Agreement"). Under the Agreement, USAG would refer customers to Cardtronics for Automated Teller Machine ("ATM") processing services. USAG would provide access to the equipment, locations, and business owners and would also provide the backend

processing services, while Cardtronics would provide the frontend processing services. Specifically, Cardtronics provided the software and data systems to communicate to certain necessary parties the information needed to settle customers' ATM transactions. Cardtronics would settle the account and pay the merchant, and USAG would process the backend of the transactions between the machine and the card processor. USAG would also create the statement for the merchant/machine owner reflecting the transactions.

7.

Under the Agreement, USAG would refer a merchant location to Cardtronics and Cardtronics would assign the respective "TID" or "Keys" for that location or ATM to USAG. The keys enabled the ATM to process the frontend transactions between the machine and the cardholder. USAG would then take those keys and "bind" them via programming so that USAG could process the backend, which together would allow the ATM to go live and fully process transactions.

8.

Under the Agreement, Cardtronics would charge USAG fees for its settlement services monthly; specifically, it would charge a transaction fee of a few cents for each transaction conducted on the ATM. The pricing has been amended a few times since the date the parties signed the Agreement under written amendments that only altered pricing, not the Agreement's other material terms.

9.

USAG would enter all of the requisite information into Cardtronics' customer relationship management software system ("CRM,") using USAG's confidential login information.

10.

USAG would refer therein not only individual merchants but also other referral sources that would place ATMs at various locations using USAG as the backend processor, and Cardtronics as the frontend processor.

11.

One such customer group was Moon, Inc. dba LibertyX and Tiagn I, Inc., which have at all relevant times been owned and operated by Chris Yim (collectively, "LibertyX"). In or around July 2017, USAG and LibertyX entered into standard and customary agreements whereby LibertyX would use USAG as its exclusive processing relationship. These agreements are standard in the industry and nearly all such agreements contain a requirement for exclusivity for a set term.

12.

USAG went to great lengths to assist LibertyX in obtaining processing accounts and getting its "Digital Coin" ATM business off the ground. For example, USAG helped LibertyX get a bank account, get set up for debit card processing, and obtain access to the ACH systems to send and receive payments. USAG also worked with third party, Dejavoo Systems, LLC ("Dejavoo") to get Dejavoo's debit terminals to communicate and interact with LibertyX's systems. USAG also purchased, programmed, and provided over a thousand terminals to LibertyX.

13.

USAG had multiple agreements with LibertyX, including several of which Cardtronics was or should have been aware. They included agreements for USAG to provide equipment, processing services, and advisor services. The equipment agreements also provided that USAG would be the exclusive processor for LibertyX.

14.

Further, for Cardtronics to act as the backend processor for LibertyX, the applicable rules and regulations that govern the electronic payment processing industry such as those promulgated by the Card Brands (which include without limit Visa, MasterCard, Discover, etc.), required that USAG and LibertyX have an agreement between each other for USAG to provide the frontend processing services to LibertyX.

15.

USAG began referring LibertyX's merchants to Cardtronics in or around July 2017. Cardtronics had actual knowledge that those referrals were related to LibertyX because USAG set up the TID/Keys related to each terminal for LibertyX, entered all the information in Cardtronics' system, and activated and managed the accounts.

16.

Since July 2017, USAG submitted 28,484 TIDs to Cardtronics, for LibertyX. For each new account that LibertyX submitted, USAG would enter that information in Cardtronics' system, accessed using USAG's confidential login information. Cardtronics would assign USAG, not LibertyX, the Keys related to each account.

17.

Suddenly on March 15, 2021, USAG stopped receiving reporting from Cardtronics on all 28,484 TIDs. On March 17, 2021, USAG received a notice of termination of certain processing agreements between USAG and LibertyX.

18.

When USAG learned that it no longer had access to online reporting on the 28,484 TIDs, it contacted Cardtronics customer service employee Christina Paolo regarding same. Ms. Paolo instructed USAG to contact LibertyX directly.

19.

On March 17, 2021, USAG discovered six additional LibertyX user accounts on the Cardtronics website that USAG had not created. USAG also found another unauthorized and unknown user account attached to USAG's LibertyX affiliate account. USAG did not create this account and did not approve it for access to USAG's information. USAG immediately deleted that account because it was unable to confirm who was accessing USAG's account information. Only Cardtronics could have created this account or allowed LibertyX to create the account.

20.

On information and belief, and as is expected to have evidentiary support after a reasonable opportunity for investigation and discovery, in or around early 2021 Cardtronics and LibertyX began conspiring to cut USAG out of the relationship and for LibertyX to process direct with Cardtronics. In March 2021, the LibertyX and Cardtronics scheme culminated with the instant porting of all 28,484 merchants from USAG's portfolio and into a direct relationship with LibertyX and Cardtronics.

21.

In doing this, Cardtronics provided LibertyX access to USAG's confidential information that includes, without limitation, the TIN/Keys, USAG's confidential login information and aggregate account information, and USAG's pricing information ("USAG's Confidential Information") in order to plan and facilitate the transition to the direct processing relationship, all to the direct detriment of USAG and in violation of Cardtronics' obligations of good faith and fair dealing.

22.

Cardtronics provided LibertyX with access to all of USAG's Confidential Information specifically for the purpose of allowing LibertyX to process direct with Cardtronics or to move all of USAG's customers to a third party.

23.

USAG notified Cardtronics about its breaches and interference on or around March 17, 2021, which Cardtronics denied.

24.

On information and belief, and as is expected to have evidentiary support after a reasonable opportunity for investigation and discovery, one or more of Cardtronics' employees, directors, or agents, actively orchestrated the above-noted breaches, interference, and improper granting of access to USAG's confidential information with actual knowledge of the existing relationships between USAG and its customers, including LibertyX, and with intent to interfere with same to USAG's detriment.

**FIRST CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

25.

USAG incorporates each and every allegation contained in paragraphs 1 through 24 as if set forth herein.

26.

USAG duly performed all of its obligations under the Agreement, unless excused.

27.

Cardtronics has materially breached the Agreement as set forth herein, including, without limitation, by: failing to provide the services agreed upon under the Agreement §§ 2.1 and 3.3;

failing to honor terminal setup instructions and allowing a third party to access those systems and reporting under § 2.5; suspending services absent a valid justification under § 2.4; refusing to honor USAG's cancellation of services following USAG's notice to Cardtronics under § 2.6; terminating portions of the agreement without notice under § 6.2; failing to honor its continuing obligations under § 6.3; failing to use ordinary care and failing to correct Cardtronics' errors under § 9.1; and, breaching the confidentiality obligations under § 7.1

28.

USAG has suffered damages as a result of Cardtronics' breach in an amount to be determined at trial.

29.

Pursuant to § 11.6 of the Agreement, USAG is entitled to recover all attorney's fees, costs of collection, and other expenses incurred therewith from Cardtronics, in addition to its other damages.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

30.

USAG incorporates each and every allegation contained in paragraphs 1 through 29 as if set forth herein.

31.

A covenant of good faith and fair dealing is implied in every contract. Implied covenants are as effective components of an agreement as covenants that are express.

32.

As set forth herein, Cardtronics has breached the implied covenant of good faith and fair dealing by acting in such a manner so as to have the effect of destroying or injuring the right of

USAG to receive the fruits of the Agreement. Specifically, but without limitation, Cardtronics undercut USAG to work directly with LibertyX after USAG had expended substantial effort and financial resources to facilitate the relationship between Cardtronics, USAG, and LibertyX.

33.

USAG has suffered damages as a result of Cardtronics' breach in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

34.

USAG incorporates each and every allegation contained in paragraphs 1 through 33 as if set forth herein.

35.

USAG had a reasonable expectation of economic benefit from its relationships with its customers.

36.

Cardtronics interfered with these relationships with malice, *i.e.*, without justification or excuse. Cardtronics' conduct was intentional in that it desired to bring about the interference, and/or knew that interference was certain or substantially certain to occur as a result of its conduct.

37.

Cardtronics' interference caused the loss of USAG's expected economic advantage.

38.

USAG has suffered damages as a result of Cardtronics' interference with its business relationships in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
(UNFAIR TRADE PRACTICES; UNFAIR BUSINESS PRACTICES, CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ.)

39.

USAG incorporates each and every allegation contained in paragraphs 1 through 38 as if set forth herein.

40.

Pursuant to California law, unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

41.

Cardtronics has engaged in such unlawful conduct including, but not limited to, direct solicitation of business from USAG's customers and improper granting of access to confidential information as set forth above in an attempt to disrupt USAG's business.

42.

The above-mentioned acts violate the elements of the unfairness doctrine because these actions caused or were likely to cause substantial injury to USAG and/or consumers that USAG and consumers could not reasonably avoid, and the injury is not outweighed by countervailing benefits to a consumer or competition.

43.

USAG is informed and believes that Cardtronics will continue to engage in unlawful, unfair, and fraudulent business practices unless and until the Court orders Cardtronics to cease and desist.

44.

On information and belief, and as is expected to have evidentiary support after a reasonable opportunity for investigation and discovery, Cardtronics has acted, and continues to act, in violation of various laws governing its business, including, but not limited to, California Business and Professions Code §§ 17200 et seq.

45.

As a direct, proximate, and foreseeable result of Cardtronics' unlawful, unfair, and fraudulent conduct, as alleged above, USAG has suffered pecuniary harm and has been damaged in a sum in excess of the jurisdictional minimum. USAG and other members of the general public will continue to suffer substantial harm and injury if the Court does not provide restitution and injunctive relief, as requested herein. USAG and other members of the general public do hereby seek all remedies against Cardtronics for such damages and for restitution and injunctive relief.

46.

USAG is therefore entitled to damages, attorneys' fees, and costs.

### FIFTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

47.

USAG incorporates each and every allegation contained in paragraphs 1 through 46 as if set forth herein.

48.

In the alternative, USAG shows that Cardtronics has been unjustly enriched through its dealings with USAG and its actions as set forth herein. To the extent USAG has no other adequate remedy at law, the doctrine of unjust enrichment or *quantum meruit* entitles USAG to relief herein.

49.

The unjust enrichment of Cardtronics is without legal cause or justification.

50.

As a result of Cardtronics' unjust enrichment, USAG has been wrongfully impoverished and has sustained damage in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### (PROMISSORY FRAUD CALIFORNIA CIVIL CODE § 3294(C)(3))

51.

USAG incorporates each and every allegation contained in paragraphs 1 through 50 as if set forth herein.

52.

In or around 2008, during the time that Cardtronics and USAG negotiated the Agreement, and continuing through 2021, when USAG continued to refer business to Cardtronics and USAG underwrote Cardtronics' application, Cardtronics represented to USAG that Cardtronics would keep USAG's online systems secure and would work with USAG to facilitate business referrals from USAG to Cardtronics.

53.

On information and belief, and as is expected to have evidentiary support after a reasonable opportunity for investigation and discovery, at the time Cardtronics and its authorized representatives made the above-referenced material misrepresentations and/or omissions to USAG, Cardtronics knew same were false and/or had no reasonable ground for believing same were true and/or made the statements with the intent to induce USAG to take the actions set forth herein, to USAG's substantial financial detriment.

54.

On information and belief, and as is expected to have evidentiary support after a reasonable opportunity for investigation and discovery, Cardtronics surreptitiously and without USAG's consent or knowledge proceeded with acts and omissions as set forth above, which were contrary to what Cardtronics had represented and agreed.

55.

USAG reasonably relied on Cardtronics' above-stated material misrepresentations, statements, promises, and/or omissions, did not know of Cardtronics' fraud or misrepresentations, and took the material actions set forth herein trusting that Cardtronics was acting in good faith, just as USAG was. Cardtronics' misrepresentations, promises, and/or omissions or fraud were not apparent until recently as set forth in the allegations above.

56.

As a direct and legal result of Cardtronics' fraudulent misrepresentations and material omissions, USAG has suffered actual, consequential, and special damages in excess of the jurisdictional minimum, plus interest until the full balance due and owing is paid. Specifically, as more detailed above, but for Cardtronics' fraudulent misrepresentations and material omissions USAG would not have referred any clients to Cardtronics, certainly not LibertyX.

57.

On information and belief, and as is expected to have evidentiary support after a reasonable opportunity for investigation and discovery, Cardtronics' unlawful acts as alleged herein were done by Cardtronics intentionally, willfully, fraudulently and/or maliciously and thereby deprived USAG of money, property and legal rights or otherwise caused injury to USAG. Said misconduct was committed with a complete and total disregard for the rights of or in detriment to USAG, and

USAG therefore is entitled to punitive damages under California Civil Code § 3294 in an amount according to proof at the time of trial.

### REQUEST FOR TRIAL BY JURY

58.

Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff, U.S. Alliance Group, Inc., respectfully prays that citation issue and Defendant be served with same, and, after due proceedings are had, that this Honorable Court enter judgment in its favor and against Defendant, Cardtronics USA, Inc. f/k/a Columbus Data Services, LLC for damages in an amount to be shown at trial, plus all interest, costs, and attorney's fees, together with any and all other general and equitable relief to which USAG may be entitled under law.

FURTHER, Plaintiff, U.S. Alliance Group, Inc., prays for a trial by jury as to all issues so triable.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _____
Gregory T. Stevens Bar Roll No.  29436
Brittany Alexander Bar Roll No. 37166
II City Plaza | 400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225 346 0285
Facsimile: 225 381 9197
Email: greg.stevens@phelps.com
Email: brittany.alexander@phelps.com

ATTORNEYS FOR PLAINTIFF U.S. ALLIANCE GROUP, INC.

**PLEASE SERVE**:

Cardtronics USA, Inc. f/k/a Columbus Data Services, LLC
through its registered agent for service of process:
Capitol Corporate Services, Inc.
8550 United Plaza Building II, Ste. 305
Baton Rouge, Louisiana  70809