UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. ALLIANCE GROUP, INC. | CIVIL ACTION |
| VERSUS | NO. 21-1074 |
| CARDTRONICS USA, INC. | SECTION "R" (2) |

**ORDER AND REASONS**

Before the Court is defendant Cardtronics USA, Inc.'s ("Cardtronics") motion to strike the testimony of plaintiff U.S. Alliance Group, Inc.'s ("USAG") proposed expert witness Steven Peisner.[1] USAG opposes the motion.[2] For the following reasons, the Court grants defendant's motion.

**I.   BACKGROUND**

This dispute arises out of an agreement in which defendant Cardtronics agreed to provide certain ATM-related services to plaintiff USAG's customers. On September 30, 2008, USAG, a California corporation,[3] entered into an "Agreement for Processing Services" (the

---

[1]   R. Doc. 55.
[2]   R. Doc. 72.
[3]   R. Doc. 1 ¶ 1.

"Agreement")[4] with Cardtronics's predecessor-in-interest, Columbus Data Services, LLC, a Louisiana LLC. USAG provides electronic payment processing solutions to merchants, such as providing physical ATMs and services related to facilitating the processing of ATM transactions.[5] Under the Agreement, USAG would refer merchants to Cardtronics for other ATM processing services.[6] The combination of USAG's and Cardtronics's services allowed the ATM users to complete a full transaction.

USAG alleges that in July 2017, it entered into an agreement to provide electronic payment processing services to a new merchant group, LibertyX.[7] The contract allegedly required LibertyX to use USAG as its exclusive processor.[8] USAG contends that that same month, it began referring LibertyX's merchants to Cardtronics.[9] In March of 2021, USAG stopped receiving reporting from Cardtronics related to LibertyX, and LibertyX terminated some of its agreements with USAG.[10]

On June 6, 2021, USAG filed suit against Cardtronics. Its complaint alleged that Cardtronics and LibertyX conspired to cut USAG out of the

---

[4]     *Id.* ¶ 6.
[5]     *Id.*
[6]     *Id.*
[7]     *Id.* ¶ 11.
[8]     *Id.*
[9]     *Id.* ¶ 15.
[10]     *Id.* ¶ 17.

relationship and for LibertyX to process directly with Cardtronics.[11] Based on these allegations, plaintiff brought several causes of action against defendant, seeking to remedy the alleged injuries it sustained during its contractual relationship with Cardtronics. Specifically, plaintiff alleged six claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) intentional interference with prospective economic advantage, (4) unfair trade practices and unfair business practices under California's Business and Professions Code, (5) unjust enrichment, and (6) promissory fraud under California Civil Code § 3294(C)(3). Plaintiff contended that, although Louisiana law applies to its contractual claims, California law governed its non-contractual claims.[12]

Cardtronics moved to dismiss USAG's complaint, asserting that plaintiff's contractual claims lacked sufficient factual specificity to state a claim for relief.[13] Cardtronics also contended that plaintiff's non-contractual claims fail because Louisiana law applies to the dispute, barring the claims brought under California law.[14]

---

[11] *Id.* ¶ 20.
[12] *Id.* ¶ 5.
[13] R. Doc. 15-1 at 1.
[14] *Id.*

The Court granted in part and denied in part Cardtronics's motion. The Court dismissed all of USAG's contract claims, except for its claims that Cardtronics breached Sections 2.1, 2.3, and 2.4 of the contract, all of which relate to Cardtronics's obligation to provide services,[15] and its claim that Cardtronics breached the implied covenant of good faith and fair dealing.[16] The Court held that the choice-of-law provision in the parties' contract did not require the application of Louisiana law to USAG's tort claims.[17] The Court was not able to determine, at the motion-to-dismiss stage, which state's law governed those claims. Accordingly, the Court denied Cardtronics's motion to dismiss USAG's tort claims, except for its claim for unjust enrichment, which was unavailable as a matter of law under the law of both Louisiana and California because the parties had an express contract.[18]

Cardtronics now moves to exclude the testimony of USAG's expert witness Steven Peisner. Cardtronics contends that Peisner's report was prepared by USAG's counsel rather than by Peisner himself, and that most

---

[15]   R. Doc. 30 at 14, 17.
[16]   *Id.* at 26-27.
[17]   *Id.* at 30-31.
[18]   *Id.* at 34-37.

4

of his opinions are legal conclusions.[19] USAG opposes Cardtronics's motion.[20] The Court considers the parties' arguments below.

## II. LEGAL STANDARD

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 "requires the district court to act as a gatekeeper to ensure that 'any and all scientific testimony or evidence

---

[19] R. Doc. 55-2 at 3-9.
[20] R. Doc. 72.

admitted is not only relevant, but reliable.'" *Metrejean v. REC Marine Logistics, LLC*, No. 08-5049, 2009 WL 3062622, at *1 (E.D. La. Sept. 21, 2009) (quoting *Daubert*, 509 U.S. at 589). This gatekeeping function applies to all forms of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

The Court's gatekeeping function consists of a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the expert's reasoning and methodology underlying the testimony are valid. *See Daubert*, 509 U.S. at 593. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590. "[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005). The Court may consider several nonexclusive factors in determining reliability, including: (1) whether the technique has been tested, (2) whether the technique has been subject to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of

6

standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). The Supreme Court has emphasized that these factors "do not constitute a 'definitive checklist or test.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 593). Rather, courts "have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

"The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (internal quotation marks omitted). "Where the expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). Further, the Supreme Court has explained that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. Rather, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case, and whether it will thereby assist the trier of fact to understand the evidence. In other words, it must determine whether it is relevant. *See Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02] (1988)).

A district court's gatekeeper function does not replace the traditional adversary system or the role of the jury within this system. *See id.* at 596. As noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* Thus, in determining the admissibility of expert testimony, the district court must accord the proper deference to "the jury's role as the proper arbiter of disputes between conflicting opinions." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

## III. DISCUSSION

USAG has not met its burden of establishing that Steven Peisner's testimony is admissible under Federal Rule of Evidence 702. USAG never expressly states the purpose of Peisner's testimony, but based on his *curriculum vitae*,[21] he appears to be an industry expert. Peisner does not provide any admissible expert analysis regarding the industry in which the parties operated or any other topic. Rather, the "opinions" he purports to provide are little more than a bare recitation of USAG's arguments.

Peisner's report consists of seventeen "opinions."[22] It also includes sections entitled "Bases and Reasons for the Opinions" and "Facts and Data Considered by the Witness in Forming the Opinion."[23] There is substantial overlap between Peisner's report and USAG's complaint. For example, ten of Peisner's seventeen "opinions" are substantively identical, if not word-for-word duplications, of paragraphs from the section of the complaint that outlines USAG's claims for relief.[24] The "Bases and Reasons for the Opinions" section, where one might expect to find Peisner's analysis that explains the methodology he employed to reach his conclusions, instead

---

[21]  R. Doc. 55-4 at 7-11.
[22]  R. Doc. 55-4 at 2-3.
[23]  *Id.* at 3-6.
[24]  *E.g., compare id.* at 2 ¶ 8; R. Doc. 1 at 7-8 ¶ 27.

9

consists entirely of copy-and-pasted paragraphs from the facts section of the complaint.[25] The "Facts and Data" section likewise consists almost exclusively of word-for-word duplications of paragraphs from the complaint.[26]

The Fifth Circuit has made clear that when testimony is "no more than [a party's] testimony dressed up and sanctified as the opinion of an expert," it is not admissible. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987). Peisner's report appears to be precisely that. Accordingly, it is inadmissible.

USAG's chief defense of Peisner's report is that the report was not ghostwritten; rather, USAG insists that Peisner reached the conclusions himself and counsel for USAG merely drafted them into the form of a report.[27] In support of this contention, USAG points to deposition testimony in which Peisner agreed with counsel for USAG's leading questions about whether the opinions in Peisner's report are his own and whether counsel merely typed up the information Peisner provided to them.[28] This testimony is irreconcilable with Peisner's testimony that counsel for USAG gave him a

---

[25] *Compare* R. Doc. 55-4 at 3-4 ¶¶ 1-9 *with* R. Doc. 1 at 2-5 ¶¶ 6-15.
[26] *Compare* R. Doc. 55-4 at 5-6 ¶¶ 2-10 *with* R. Doc. 1 at 5-7 ¶¶ 16-24.
[27] R. Doc. 72 at 6.
[28] *Id.* at 7.

10

draft report that already included all the opinions written in it[29] and that he was not familiar with several of the terms used and laws referenced in his report.[30] USAG's argument that the report was the product of Peisner's independent expert analysis is also difficult to square with the fact that the report was produced just two days after Peisner was engaged.[31]

Even if Peisner had reviewed case materials, performed an independent analysis, and dictated his opinions to counsel for USAG to type into a report, his testimony is not admissible because it is completely unsupported. The "Bases and Reasons for the Opinions" section of his report in fact provides no bases or reasons for his opinions. Rather, it simply recites, word-for-word, USAG's own version of the facts. He does not provide any explanation of the investigation he performed, the specific sources of information he relied on, or what methodology he employed to reach his conclusions. It is well settled that expert reports that are "nothing more than bare conclusions" are inadmissible because they offer no value to the trier of fact. *Slaugther v. Southern Talc Co.*, 919 F.2d 304, 307 (5th Cir. 1990). Courts thus routinely exclude expert testimony where the expert "offers little more than personal assurances based on his [professional] experience that

---

[29] R. Doc. 55-3 at 26-28 (Peisner Dep. Tr. 74:20-76:5).
[30] *Id.* at 24-25 (Peisner Dep. Tr. 72:22-73:19).
[31] *See* R. Doc. 97-1 at 6 (Peisner Dep. Tr. 65:8-15).

his conclusions are so" on the grounds that such opinions have "insufficient factual support and lack [] reliable methodology." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory."). "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo*, 826 F.2d at 424.

USAG argues that counsel for Cardtronics failed to elicit testimony in Peisner's deposition that may have revealed more information about Peisner's methodology. But it is not Cardtronics's job to fill the holes in Peisner's report. Rather, the party offering an expert has the burden of establishing his reliability. *See Moore*, 151 F.3d at 276.

Further, the testimony Cardtronics did elicit at Peisner's deposition confirms that Peisner did not perform meaningful independent analysis. For example, one of Peisner's opinions is that the amount of USAG's damages is "at least $9,245,026.56."[32] At Peisner's deposition, he confirmed that he reached this conclusion simply by adding up the numbers on a spreadsheet USAG provided to him. He does not know who created the spreadsheet or where the numbers came from.[33] Rather, he simply confirmed that the

---

[32]    R. Doc. 55-4 at 2 ¶ 7.
[33]    R. Doc. 55-3 at 15-16 (Peisner Dep. Tr. 46:25-47:8).

numbers presented to him added up to $9,245,026.56. He likened his analysis to "two plus two equals four."[34] Although "courts have afforded experts a wide latitude in picking and choosing the sources on which to base opinions," courts are nonetheless required "to examine the reliability of those sources." *Viterbo*, 826 F.2d at 422. The facts on which an expert relies must be of the sort that "experts in the particular field would reasonably rely" in forming an opinion on the subject. Fed. R. Evid. 703. Experts may even rely on hypothetical facts, so long as they are supported by the evidence. *See Joseph v. Doe*, No. 17-5051, 2021 WL 2313475, at *5 (E.D. La. June 7, 2021). Nowhere in his report does Peisner explain the basis for the facts he relied upon; rather, he simply accepts USAG's version of the facts as true and recites them as his own expert opinion. His opinion is thus unhelpful to the trier of fact.

Many of Peisner's conclusions are independently inadmissible on a separate ground: they are legal conclusions. It is black-letter law that "[e]xperts cannot render conclusions of law or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020). But that is precisely what Peisner does. For example, he testifies that:

---

[34] *Id.* (Peisner Dep. Tr. 46:6-24).

- "Cardtronics materially beached the Agreement,"[35]

- "USAG suffered damages as a result of Cardtronics's breach,"[36]

- "USAG is entitled to recover all attorney's fees,"[37]

- "Cardtronics breached the implied covenant of good faith and fair dealing,"[38]

- "Cardtronics interfered with [USAG's relationships with its customers] . . . with malice," which "caused the loss of USAG's expected economic advantage,"[39]

- "Cardtronics engaged in unlawful conduct including . . . direct solicitation of business from USAG's costumers," which "violate[d] the elements of the unfairness doctrine,"[40]

- "Cardtronics has acted" in violation of "California Business and Professions Code §§ 1700 et seq.,"[41] and

- "As a direct, proximate, and foreseeable result" of Cardtronics's conduct, "USAG has suffered pecuniary harm."[42]

Peisner even testifies to what the law is, untethered from the facts of the case: "[p]ursuant to California law, unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are

---

[35] R. Doc. 55-4 at 2 ¶ 8.
[36] *Id.* ¶ 9.
[37] *Id.* ¶ 10.
[38] *Id.* ¶ 11.
[39] *Id.* at 3 ¶ 12.
[40] *Id.* ¶¶ 14-15.
[41] *Id.* ¶ 16.
[42] *Id.* ¶ 17.

14

unlawful."[43] Peisner is not a lawyer, nor may he present USAG's legal arguments under the guise of providing expert testimony. *See Orthopedic & Sports Injury Clinic v. Wang Labs, Inc.*, 922 F.2d 220, 225 (5th Cir. 1991) (principle that expert opinions "setting forth ultimate or conclusory facts and conclusions of law" are inadmissible is "especially applicable here, as here, the expert is opinion on . . . issue[s] more properly left to judges and juries").

Most of Peisner's "opinions" thus "invade the court's province and [are] irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). And for the reasons discussed earlier, Peisner's opinions that do not constitute legal conclusions are nevertheless wholly unsupported and unreliable. They do not "assist the [court] in arriving at an intelligent and sound verdict," *Viterbo*, 826 F.2d 422, and are thus inadmissible under Fed. R. Evid. 702.

---

[43] *Id.* 13.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion.

New Orleans, Louisiana, this 13th day of December, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE