UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

U.S. ALLIANCE GROUP, INC.                              CIVIL ACTION

VERSUS                                                          NO. 21-1074

CARDTRONICS USA, INC.                          SECTION "R" (2)


**ORDER AND REASONS**


Before the Court is defendant Cardtronics USA, Inc.'s ("Cardtronics")

motion for summary judgment on its affirmative defense of release.  USAG

opposes the motion.[1]  For the following reasons, the Court grants defendant's

motion.


I.      **BACKGROUND**

This dispute arises out of an agreement in which defendant

Cardtronics agreed to provide certain ATM-related services to plaintiff

USAG's customers.   On September 30, 2008, USAG entered into an

"Agreement for Processing Services"[2] with Cardtronics's predecessor-in-

interest, Columbus Data Services, LLC.  Under the agreement, USAG would

---

[1]      R. Doc. 104.
[2]      R. Doc. 1 at 2-3 ¶ 6.

provide access to the equipment and back-end processing services, while Cardtronics would provide front-end processing services.[3]  The combination of USAG's and Cardtronics's services allowed the ATM users to complete a full transaction.

In July 2017, USAG entered into an agreement to provide electronic payment processing services to a new merchant group, LibertyX.[4]  The contract required LibertyX to use USAG as its exclusive processor.[5]  That same month, USAG began referring LibertyX's merchants to Cardtronics.[6]  In March of 2021, USAG stopped receiving reporting from Cardtronics related to LibertyX, and LibertyX terminated some of its agreements with USAG.[7]

On June 6, 2021, USAG filed suit against Cardtronics.  Its complaint alleged that Cardtronics and LibertyX conspired to cut USAG out of the relationship and for LibertyX to process directly with Cardtronics.[8]  Based on these allegations, LibertyX brought several claims against Cardtronics: (1) breach of contract, (2) breach of the implied covenant of good faith and fair

---

[3]    *Id.*
[4]    *Id.* at 4 ¶ 11.
[5]    *Id.*
[6]    *Id.* at 5 ¶ 15.
[7]    *Id.* ¶ 17.
[8]    *Id.* at 6 ¶ 20.

dealing, (3) intentional interference with prospective economic advantage, (4) unfair trade practices and unfair business practices under California's Business and Professions Code, (5) unjust enrichment, and (6) promissory fraud under California Civil Code § 3294(C)(3).

Cardtronics moved to dismiss USAG's complaint, asserting that plaintiff's contractual claims lacked sufficient factual specificity to state a claim for relief.[9]  Cardtronics also argued that plaintiff's non-contractual claims fail because Louisiana law applies to the dispute, barring the claims brought under California law.[10]

The Court granted in part and denied in part Cardtronics's motion. The Court dismissed all of USAG's contract claims, except for its claims that Cardtronics breached Sections 2.1, 2.3, and 2.4 of the contract, all of which relate to Cardtronics's obligation to provide services,[11] and its claim that Cardtronics breached the implied covenant of good faith and fair dealing.[12] The Court held that the choice-of-law provision in the parties' contract did not require the application of Louisiana law to USAG's tort claims, and the Court was not able to determine, at the motion-to-dismiss stage, which

---

[9]     R. Doc. 15-1 at 1.
[10]    *Id.*
[11]    R. Doc. 30 at 14, 17.
[12]    *Id.* at 26-27.

state's law governed those claims.[13]   Accordingly, the Court denied Cardtronics's motion to dismiss USAG's tort claims, except for its claim for unjust enrichment, which was unavailable as a matter of law under the law of both Louisiana and California because the parties had an express contract.[14]

Cardtronics now moves for summary judgment on the grounds that USAG's claims against it are barred by a settlement agreement that USAG entered into with LibertyX.[15]   Cardtronics contends that USAG brought similar claims against LibertyX premised on an alleged conspiracy between LibertyX and Cardtronics to cut USAG out of the business relationship. Cardtronics further contends that USAG entered into a settlement agreement with LibertyX in which USAG agreed to release all claims related to the dispute against LibertyX and its past, present, and future affiliates in exchange for a $1 million settlement payment.[16]   Cardtronics asserts that after the settlement agreement was executed, LibertyX and Cardtronics were both acquired by the same parent company, rendering the two parties affiliates.[17]  Cardtronics thus asserts that it is a "future affiliate" for purposes

---

[13]   *Id.* at 30-35.
[14]   *Id.* at 35-37.
[15]   R. Doc. 62-10 at 1.
[16]   *Id.* at 3-7.
[17]   *Id.* at 8.

of the settlement agreement, against which USAG released its claims.  USAG does not dispute that it released all claims against LibertyX and LibertyX's future affiliates, but contends that it did not intend to release its claims against Cardtronics.[18]  The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting

---

[18]      R. Doc. 104 at 5.

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

Cardtronics contends that USAG's claims are barred by USAG's settlement agreement with LibertyX. The Court will first determine which state's law applies to the interpretation of the settlement agreement. It will then address the merits of Cardtronics's motion.

### A.      Choice of Law

The settlement agreement between USAG and LibertyX contains a choice-of-law provision that states: "[t]his Settlement Agreement shall be construed and enforced according to the laws of the State of California

without application of its conflicts or choice of law rules."[19]  Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). Under Louisiana law, contractual choice-of-law provisions are presumed valid, unless the chosen law "contravenes the public policy" of the state whose law would otherwise apply.  *See* La. Civ. Code art. 3540; *see also Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. App. 1 Cir. 2012) ("A choice of law provision in a contract is presumed valid until it is proved invalid.").  In this case, neither party contests that California law applies to the application of the settlement agreement.

### B.    The Settlement Agreement

Under California law, a court's interpretation of a written contract "begins with the threshold question of whether the writing is ambiguous— that is, reasonably susceptible to more than one interpretation." *Adams v. MHC Colony Park, L.P.*, 224 Cal. App. 4th 601, 619 (Cal. Ct. App. 2014). "The analysis of whether an ambiguity exists is not limited to the words of the contract." *Id.* at 620.  Rather, under California law, trial courts "are required to receive provisionally any proffered parol evidence that is relevant

---

[19]    R. Doc. 62-12 at 6 § 9.

to show whether the contractual language is reasonably susceptible to a particular meaning," as "[s]uch parol evidence might expose a latent ambiguity when the contract appears unambiguous on its face." *Id.* Accordingly, California courts hold that "[t]rial courts err if they refuse to consider the alleged parol evidence on the ground that no parol evidence of any sort is pertinent because the particular contract in dispute is unambiguous." *George v. Automobile Club of Southern California*, 201 Cal. App. 4th 1112, 1122 (Cal. Ct. App. 2011). Nevertheless, "there may be no error if the trial court conditionally accepts as true that plaintiff can proffer specified parol evidence and, having considered the parol evidence allegations, then determines as a matter of law that the parol evidence alleged must be disregarded because, for whatever reason, the contract is not reasonably susceptible of the interpretation plaintiff alleged." *Id.*

Although courts must consider parol evidence for the purpose of determining whether a contract is ambiguous, it "cannot be admitted to show intention independent of an unambiguous written instrument." *Sunniland Fruit, Inc. v. Verni*, 233 Cal. App. 3d 892, 898 (Cal. Ct. App. 1991). Nor may extrinsic evidence be admitted "to add to, detract from, or vary the terms of a written contract." *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 39 (Cal. 1968).

With these principles in mind, the Court turns to the settlement agreement at issue.  In its settlement with LibertyX, USAG agreed that, in exchange for a $1 million settlement payment, it would release all "USAG Released Claims" against "the Moon Releasees."[20]  In order to determine whether the release in the settlement agreement applies to this dispute, the Court must determine (1) whether this lawsuit involves "USAG Released Claims" and (2) whether Cardtronics is a "Moon Releasee."  If so, the Court must determine whether there is any other basis not to apply the release to this dispute.

      *1. Whether USAG's Claims Against Cardtronics are "USAG Released Claims"*

The settlement agreement broadly defines "USAG Released Claims" as any claims that

> in any way are based upon, arise out of, result from, relate to, are involved with, pertain to, affect, bear upon, or are connected, in whole or in part, to or with any of the following, without limitation: (i) the Agreements; (ii) USAG's claims or allegations in the Action; and/or (iii) USAG's or the USAG Releasor's business relationship with the Moon Defendants or the Moon Releasees[.][21]

---

[20]    R. Doc. 62-12 at 2 § 1.4.

[21]    *Id.* at 3 § 2.1

There can be little doubt that this lawsuit fits the definition of "USAG Released Claims." Most obviously, the claims in this case relate to USAG's claims in its lawsuit against LibertyX. USAG's complaint against LibertyX alleges that LibertyX breached its agreements with USAG by "switching their services to an alternative processor."[22] That "alternative processor" is Cardtronics. Similarly, USAG's complaint against Cardtronics involves allegations that LibertyX terminated its contracts with USAG in order to "process direct[ly] with Cardtronics."[23] Indeed, USAG's corporate representative testified that USAG's lawsuit against LibertyX is premised on the same set of facts and allegations as this lawsuit.[24]

This lawsuit also directly relates to USAG's relationship with the "Moon Defendants." The settlement agreement collectively defined the "Moon Defendants"—the defendants in USAG's lawsuit against LibertyX—as Moon, Inc. d/b/a/ LibertyX; Tiagn I, Inc.; and Chris Yim, the owner of those entities. In its complaint, USAG contends that after USAG developed a business relationship with LibertyX in which USAG served as a middle-man between LibertyX and Cardtronics, LibertyX and Cardtronics conspired to

---

[22]     R. Doc. 62-1 at 5 ¶ 23.
[23]     R. Doc. 1 at 5-6 ¶¶ 17, 20.
[24]     R. Doc. 62-2 at 11 (Cheikha Dep. Tr. 45:10-19).

cut USAG out of the relationship.[25]  The dispute is expressly predicated on Cardtronics's interference with its relationship with LibertyX.

In its opposition, USAG points out that its lawsuit against LibertyX involves claims that LibertyX breached its agreements with USAG, agreements to which Cardtronics was not a party.[26]  But its complaint against Cardtronics expressly cites as evidence of the alleged conspiracy that LibertyX terminated its agreements with USAG.[27]  Further, a representative of USAG testified that USAG's claims against Cardtronics are premised on Cardtronics's interference with USAG's agreements with LibertyX.[28]  There can be little doubt that the two disputes are related, even though Cardtronics was not a party to the contracts with which it allegedly interfered. Accordingly, the Court finds that USAG's claims against Cardtronics constitute "USAG Released Claims."

2.    *Whether Cardtronics is a "Moon Releasee"*

---

[25]    R. Doc. 1 at 6 ¶ 20.

[26]    R. Doc. 104 at 2.

[27]    R. Doc. 1 at 5 ¶ 17.

[28]    *See, e.g.*, R. Doc. 62-6 at 17 (Cheikha Dep. Tr. 232:13-18).

The parties also dispute whether Cardtronics is a "Moon Releasee," or a party against which USAG agreed to waive its claims in the settlement agreement. The settlement agreement defines "Moon Releasees" as

> the Moon Defendants and each of their respective past, present and future affiliates, divisions, partners, parents, predecessors, successors, subsidiaries, privies, and their representatives, employees, principals, servants, stockholders, members, managers, officers, directs, agents, assigns, insurers, heirs, and attorneys[.][29]

At the time the settlement agreement was executed, Cardtronics was a party to a contract with LibertyX; it was not "affiliated" with LibertyX or any of the other Moon Defendants. It thus did not fit the definition of a "Moon Releasee." But, after the settlement agreement was executed, both LibertyX and Cardtronics were acquired by the same parent company. Accordingly, Cardtronics and LibertyX are now affiliates, and as the release covers "future affiliates," Cardtronics is a "Moon Releasee."

USAG nevertheless argues that the parties did not intend for Cardtronics to be considered a "Moon Releasee." USAG cites to a California case, *Iqbal v. Ziadeh*, 100 Cal. App. 5th 1 (Cal. Ct. App. 2017), which it contends "addressed a substantially similar question."[30] In that case, the court assessed whether the defendant, which had a contract with a third

---

[29]   R. Doc. 62-12 at 3 § 2.1.
[30]   R. Doc. 104 at 7.

13

party against which the plaintiff's claims had been released, was an "affiliate" of that third party.  The court looked to several definitions of "affiliate," a term it found was "unambiguous."  *Id.* at 9-10.  Notably, the court observed that one common definition of "affiliate" includes "subsidiary, parent, or sibling corporation[s]."  *Id.* (citing Black's Law Dict. 10th ed. 2014).  The defendant did not meet common definitions of "affiliate," but the court went on to "construe[] the [agreement] as a whole" to determine whether the defendant was an "affiliate." *Id.* at 10.  The court ultimately concluded that the defendant was not an affiliate of the third party, as the defendant had "only a contractual relationship" with that party.  *Id.* at 10-11.

It is undisputed that Cardtronics is now the sibling corporation of LibertyX.  Unlike the defendant in *Iqbal*, Cardtronics is thus an "affiliate" of the Moon Defendants.  *See Iqbal*, 100 Cal. App. 5th at 9; *see also* Cal. Corp. Code § 150 (defining "affiliate" as one that is "under common control with the other specified corporation").  USAG nevertheless urges the Court to interpret the term "affiliate" in light of the contract as a whole.  Specifically, USAG points out that the non-disparagement clause of the settlement agreement states that "[n]othing herein shall limit USAG's ability to accurately describe its relationship with the Moon Defendants in court filings that USAG may make to pursue its claims against third parties, including

14

without limit Cardtronics."[31]  It argues that this clause demonstrates that USAG did not intend to release claims against Cardtronics.

If Cardtronics and LibertyX had already been affiliates at the time the settlement agreement was entered, USAG would have identified a contractual ambiguity.  For example, in *Vahle v. Barwick*, 93 Cal. App. 4th 1323 (Cal. Ct. App. 2001), a California court found a triable issue of fact regarding whether the plaintiff intended to release its claims against the defendant when it entered into a settlement with a third party.  The court considered, among other things, that the express terms of the release covered claims against the defendant at the time the release was executed, even though the plaintiff had already indicated that it planned to sue the defendant. *Id.* at 1329-33 (also discussing the fact that "[n]one of the parties to the [settlement] agreement ha[d] any discernable motive to release" claims against the defendant, and the lawsuit against the defendant was of a different nature than the settled lawsuit).  Conversely, here, at the time the agreement was executed, Cardtronics was not covered by the terms of the release because it was not an "affiliate" of the Moon Defendants; rather, it was a third party, as the non-disparagement clause states.  There is thus no inherent conflict within the settlement agreement.

---

[31]     R. Doc. 62-12 at 5 § 4.

The non-disparagement provision indicates that USAG contemplated suing Cardtronics when it settled with LibertyX.  That USAG contemplated litigation against Cardtronics at the time of the settlement does not mean Cardtronics could not later become an "affiliate" for purposes of the release. In *Oyster Optics, LLC v. Infinera Corp.*, the Eastern District of Texas considered a similar question regarding the scope of a release in a settlement agreement.  No. 18-206, 2019 WL 2603173 (E.D. Tex. June 25, 2019).  In that case, the plaintiff, Oyster, entered into a settlement agreement with a third party, Coriant, in which Oyster released all claims against Coriant and its affiliates.  *Id.* at *1.  At the time it settled with Coriant, Oyster had already sued Infinera.  *Id.*  After the settlement agreement was executed, Infinera acquired Coriant, thereby making Infinera an affiliate of Coriant.  Oyster argued that its claims against Infinera were not barred by the settlement agreement because it had already sued Infinera at the time it settled with Coriant.  The court granted summary judgment in favor of Infinera.  In so doing, it observed that "[t]here is no reasonable doubt that based on the express written language, the Release was intended to apply to both Affiliates at the time the Agreement became effective *as well as* to entities that became Affiliates in the future."  *Id.* at 7 (emphasis in original).  The court noted that this result is "wholly consistent" with the purpose of the release, as Coriant

16

"would not want a future potential acquirer to be unprotected and thereby threaten such a future sale." *Id.* Finally, the court held that if Oyster wanted to retain the right to continue pursuing its claims against Infinera, it could have expressly carved Infinera out of the release. *Id.* at *9. The Federal Circuit affirmed the district court's decision. *Oyster Optics, LLC v. Infinera Corp.*, 843 F. App'x 298, 301-02 (Fed. Cir. 2021). Although that case analyzed New York contract law, USAG gives the Court no reason to believe that California law would compel a different result.

USAG also identifies several pieces of extrinsic evidence that it contends supports its interpretation that "Moon Releasees" excluded Cardtronics. The Court will provisionally accept this evidence for the purpose of determining whether there is any "latent ambiguity" in the contract. *Adams*, 224 Cal. App. 4th at 619.

In particular, USAG points to two emails from counsel for LibertyX during settlement negotiations in which counsel for LibertyX asked counsel for USAG to confirm whether the $1 million settlement amount was "tied to any amounts that USAG might obtain from Cardtronics" or "contingent on" USAG's dispute with Cardtronics. All these emails show is that, at the time the settlement agreement with LibertyX was negotiated, USAG was not simultaneously settling any claims against Cardtronics. They do not

demonstrate that USAG would preserve its claims against Cardtronics in the event Cardtronics eventually became an affiliate of LibertyX.

Similarly, USAG puts forth the self-serving declaration of its current litigation counsel, James Huber, who also represented USAG in its settlement with LibertyX.   Huber represents that during settlement negotiations, he "repeatedly stated USAG's intent that the settlement did not include" Cardtronics, as USAG was "in the process of filing this action."[32] USAG also submits a declaration from Fadi Cheikha, CEO of USAG, that says that USAG did not intend to include Cardtronics in the settlement with LibertyX; rather, Cardtronics was specifically carved out because Cardtronics did not wish to settle and "LibertyX did not agree to contribute the full amount owed on behalf of Cardtronics."[33]  The most these statements show is that USAG settled its claims against LibertyX, not LibertyX *and* Cardtronics, for $1 million.   Like the emails from LibertyX's counsel, the statements from Huber and Cheikha do not demonstrate that the parties intended that USAG's claims against Cardtronics would survive in the event Cardtronics became a "Moon Releasee."

---

[32]     R. Doc. 104-3 at 1 ¶ 4.
[33]     R. Doc. 75 at 5 ¶ 24.

Finally, USAG asserts that Chris Yim, CEO of LibertyX, testified that LibertyX did not "expressly intend to release Cardtronics" when it entered into the settlement agreement with USAG.[34]  In particular, Yim testified that "[t]he settlement wasn't specific to any party."[35]  Rather, LibertyX was hoping to be acquired and "knew that any litigation would scare" potential acquirers, "so [it] wanted to have as broad release as possible, to make sure that litigation was not going to be a factor in anyone's diligence, or prevent[] any transactions from occurring."[36]  In light of that, LibertyX was "not trying to include or exclude Cardtronics specifically."[37]

If anything, this testimony supports Cardtronics's interpretation of the settlement agreement.  LibertyX wanted as broad of a release as possible so that potential acquirers would not be deterred by the threat of litigation.  In other words, LibertyX wanted to avoid the risk that a member of its future corporate family could be embroiled in this dispute, as that risk could jeopardize its ability to be acquired.[38]

---

[34]    R. Doc. 104 at 5.

[35]    *Id.*

[36]    *Id.*

[37]    *Id.*

[38]    USAG disputes that it knew LibertyX was in discussions to be acquired at the time the settlement agreement was executed.  Although Cheikha states in his affidavit that he was not aware that LibertyX was in discussions to be acquired, R. Doc. 75 at 6 ¶ 30, he testified under oath in his deposition that in the months leading up to the execution of the

USAG identifies no evidence that indicates that it intended to preserve its claims against Cardtronics even if Cardtronics later became affiliated with LibertyX, much less that it communicated this intent to LibertyX during the settlement negotiations.  *See Iqbal*, 10 Cal. App. 5th at 9 ("The parties' undisclosed intent or understanding is irrelevant to contract interpretation."); *see also Skrbina v. Fleming Companies*, 45 Cal. App. 4th 1353, 1367 (Cal. Ct. App. 1996) ("If [plaintiff] signed the release on the mere unspoken belief that the release did not encompass such claims, despite express language in the release to the contrary, [plaintiff] may not now rely on his unspoken intention not to waive these claims in order to escape the effect of the release.").

Accordingly, the Court does not find that USAG's proffered parol evidence exposes any "latent ambiguity" in the otherwise unambiguous language of the settlement agreement.  *Adams*, 224 Cal. App. 4th at 619.  The settlement agreement is not "reasonably susceptible" of the interpretation that USAG advances—that "future affiliates" actually means all future

---

settlement agreement, USAG suspected that NCR had designs on acquiring LibertyX. R. Doc. 62-6 at 6 (Cheikha Dep. Tr. 107:1-15). Further, USAG itself relies on testimony from Yim that the reason LibertyX wanted such a broad was release was because of the potential acquisition.  R. Doc. 104 at 5.  Even if USAG did not know that LibertyX wanted to be acquired, that would not create an ambiguity in the clear language of the release.

affiliates *except for Cardtronics*.   Because Cardtronics is presently an affiliate of LibertyX, it is a "future affiliate" of the "Moon Defendants," thereby rendering Cardtronics a "Moon Releasee."

### 3.   Application of the Settlement Agreement

Having concluded that USAG's claim against Cardtronics is a "USAG Released Claim," and Cardtronics is a "Moon Releasee" for purposes of the settlement agreement, the Court considers whether there is any reason not to dismiss USAG's claims against Cardtronics pursuant to that agreement. USAG argues that Cardtronics cannot invoke the protection of the settlement agreement because it has failed to establish that it is a "third-party beneficiary" of that agreement.[39]  In so doing, it contends that generally, non-signatories cannot enforce the terms of agreements to which they were not a party.

California law makes clear that "[a] third party may enforce a contract made for its benefit." *Iqbal*, 10 Cal. App. 5th at 6.  When the contract's language "unambiguously expresses a mutual intent to benefit a class of third persons, a member of that class makes a prima facie case of entitlement to its enforcement by proving the agreement." *Rodriguez v. Oto*, 212 Cal. App.

---

[39]    R. Doc. 104 at 6.

4th 1020, 1023 (Cal. Ct. App. 2013).  When a release "purports to excuse everyone in the world from liability," the "burden is on the third party to prove the parties to the release agreement intended to benefit the third party." *Vahle*, 93 Cal. App. 4th at 1328.  Here, the settlement agreement unambiguously expresses an intent to benefit a large class of third persons: all past, present, and "future affiliates, divisions, partners, parents, predecessors, successors, subsidiaries, privies, and their representatives, employees, principals, servants, stockholders, members, managers, officers, directors, agents, assigns, insurers, heirs, and attorneys" of the Moon Defendants.[40]  If USAG's position that non-signatories cannot invoke the protection of the settlement agreement is correct, it would render the release a nullity, as most of the entities contemplated by the agreement were not signatories.

Further, the evidence indicates that the parties intended to benefit Cardtronics "or a class of persons including [Cardtronics]." *Rodriguez*, 212 Cal. App. 4th at 1029.  "Factors relevant to the third-party beneficiary inquiry in the context of a release of claims include [1] whether the language of the release evidences an intent to benefit the third party, [2] whether the release expressly mentions either the third party or the type of claim released, and

---

[40]    R. Doc. 62-12 at 3 § 2.1.

[3] whether the parties had a discernable motive to release the third party from liability." *Friends of Riverside Airport LLC v. Dep't of the Army*, 2021 WL 4894275, at *9 (C.D. Cal. Sept. 13, 2021) (cleaned up). Here, the language of the release broadly refers to all future affiliates; it expressly mentions the specific type of claim released, which, as discussed in Section III.B.1, *supra*, includes this dispute; and the parties had a discernable motive to release claims against Cardtronics, as the evidence USAG relies upon makes clear that LibertyX wanted the release to protect any and all potential future corporate affiliates.[41]

The thrust of USAG's argument is that because it wanted to sue Cardtronics when it settled with LibertyX, it cannot be foreclosed from doing so now that Cardtronics is affiliated with LibertyX. If USAG wanted to guard against the risk that its claims against Cardtronics would be barred by the settlement agreement, it could have written a carve-out to the release section, as it did to the non-disparagement section. It did not so do. Under California law, courts are not permitted to rely on extrinsic evidence to "add to, detract from, or vary the terms of a written contract." *Pacific Gas & Elec. Co.*, 69 Cal.2d at 39. Yet, that is precisely what USAG asks the Court to do here. The Court declines USAG's invitation to rewrite the contract simply

---

[41]     R. Doc. 104 at 5.

because it is disappointed that a risk that it faced when it broadly released all claims related to this dispute against future affiliates—including, potentially, Cardtronics—materialized.

This conclusion is consistent with the general principles under California law that "a written release extinguishes any obligation covered by the release's terms, provided it has not been obtained by fraud, deception, misrepresentation, duress, or undue influence," *Skrbina*, 45 Cal. App. 4th at 1366, and that the "release of all claims and causes of action must be given a comprehensive scope," *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 589 (Cal Ct. App. 2010) (internal quotation marks omitted).  Otherwise, it would be "virtually impossible to create a general release that actually achieved its literal purpose." *Id.* (cleaned up).  If the parties "intend to leave some things open and unsettled, their intent to do so should be made manifest." *Id.* (internal quotation marks omitted).  The intent to exclude Cardtronics from the release in the event Cardtronics becomes an "affiliate" of LibertyX is not "manifest" in the settlement agreement, and USAG has failed to demonstrate that there is a genuine dispute of material fact on this point.  Accordingly, the Court will enforce the plain terms of the settlement agreement to bar USAG's claims.

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion. Plaintiff's claims against defendant are hereby DISMISSED WITH PREJUDICE.  The Court DISMISSES AS MOOT defendant's other pending partial motions for summary judgment.[42]  The Court also DISMISSES AS MOOT plaintiff's motion to strike defendant's motions for summary judgment as violative of Local Rule 7.7.[43]  To the extent defendant seeks to recover attorney's fees,[44] it may file an appropriate motion under Federal Rule of Civil Procedure 54(d).


New Orleans, Louisiana, this ___9th___ day of January, 2023.


_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[42]   R. Docs. 56, 61, & 63.
[43]   R. Doc. 81.
[44]   R. Doc. 62-10 at 1 n.1.

25